FILED
United States Court of Appeals
Tenth Circuit

August 25, 2015

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHNNY RAY DAVIS,

             Petitioner-Appellant,

v.

TRACY McCOLLUM,

             Respondent-Appellee.

No. 15-5018
(D.C. No. 4:14-CV-00260-GKF-FHM)
(N.D. of Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

Before **HARTZ**, **TYMKOVICH**, and **MORITZ**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

Johnny Ray Davis received a sentence of life in prison after being convicted of first-degree murder in Oklahoma. After his state-court challenges to his conviction and sentence failed, he filed a habeas petition under 28 U.S.C. § 2254. The district court rejected his claims and denied a certificate of appealability (COA). Because we agree that reasonable jurists would not debate Davis's entitlement to a COA, we DENY Davis's request for a COA and DISMISS this appeal.

# I. Background

At age sixteen, Davis was involved in a botched convenience store robbery ending in the murder of the convenience store clerk. He was tried as an adult pursuant to Oklahoma law and convicted of first-degree murder.[1] On October 19, 1992, in accordance with the jury's recommendation, the trial judge sentenced him to life imprisonment without the possibility of parole for that crime.

Davis appealed the sentence through the Oklahoma state system. The Oklahoma Court of Criminal Appeals (OCCA) ultimately affirmed the sentence on February 23, 1995. Because he filed no petition for certiorari, his sentence became final later that year. Over eighteen years later, on June 7, 2013, Davis filed a *pro se* application for post-conviction relief in state court, which as relevant here claimed his age at the time of offense precluded a sentence of life without parole. Two weeks later, he filed a second application for relief with assistance of counsel, which reiterated his initial claims. The state trial court denied the applications and the OCCA affirmed that denial on April 29, 2014.

On May 16, 2014, Davis filed a *pro se* federal habeas petition under 28 U.S.C. § 2254.[2] He alleged that: (1) his life without parole sentence violated the Constitution due to a "new standard [that had] been set in the U.S. Supreme

---

[1] A second conviction for using a firearm in the theft is not relevant here.

[2] We construe that petition and Davis's pro se filings on appeal liberally. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Court" invalidating sentencing schemes mandating life in prison without possibility of parole for juvenile offenders; (2) his counsel was ineffective at trial and on appeal; and (3) as "a juvenile offender, [his] sentence of life without parole" was unconstitutional. R., Vol. I at 7, 9.

The district court concluded that the last two issues were time-barred and that the first issue lacked merit because the case Davis claimed created a new standard, *Miller v. Alabama*, 132 S. Ct. 2455 (2012), was inapposite. The court thus denied habeas relief and denied a COA.

## II. Analysis

A state prisoner needs a COA to appeal a denial of federal habeas relief. *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003). To demonstrate an entitlement to a COA, the prisoner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 336 (internal quotation marks omitted). Because the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies here, we keep in mind that when a state court previously adjudicated the merits of a claim, a federal court may grant habeas relief only if that state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). In other words, we incorporate "AEDPA's deferential treatment of state court decisions . . . into our consideration of a habeas petitioner's request for COA." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004).

As mentioned above, the district court rejected Davis's last two grounds of error as time-barred. Davis waived any potential challenge to that conclusion by failing to address it in his opening brief on appeal. *Petrella v. Brownback*, 787 F.3d 1242, 1266 n.10 (10th Cir. 2015). Even barring waiver, there could be no debate on the point. Because Davis's conviction became final before AEDPA's enactment, the deadline for him to file his habeas petition was April 24, 1997, barring any exceptions, *see Fisher v. Gibson*, 262 F.3d 1135, 1142 (10th Cir. 2001), and we detect none.

Thus, the only issue stems from Davis's first asserted ground of error: whether *Miller* means the sentence of life without possibility of parole violates the Constitution because Davis was a juvenile when he committed his crime. *Miller* held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller*, 132 S. Ct. at 2460. Davis filed for state post-conviction relief within a year of *Miller*'s creation of a new constitutional rule on June 25, 2012 and filed a federal habeas petition before the limitations period that

was tolled during his state application's pendency expired.[3] Thus, this issue is not time-barred if *Miller* applies retroactively to cases on federal collateral review.[4] 28 U.S.C. § 2244(d)(1)(C), (d)(2).  Reasonable jurists have disagreed on that question.  *See Croft v. Williams*, 773 F.3d 170, 171 (7th Cir. 2014) (noting "robust debate" on the matter); *compare In re Morgan*, 717 F.3d 1186, 1187 (11th Cir. 2013) (Pryor, J., respecting the denial of rehearing *en banc*) (arguing *Miller* is not retroactive on federal habeas review), *with id.* at 1195 (Barkett, J., dissenting from the denial of rehearing *en banc*) (disagreeing), *and id.* at 1196, 1200–01 & n.3 (Wilson, J., dissenting from the denial of rehearing *en banc*) (arguing question is sufficiently difficult and important to be considered by full court and collecting examples of the closeness of the question).  We have not yet

---

[3]  He filed for state post-conviction relief on June 7, 2013, nineteen days before the expiration of the year-long limitations period that began for *Miller*-based claims on June 26, 2012 (the day after *Miller*'s publication).  The application tolled that limitations period until April 29, 2014, when the OCCA denied relief, and he filed his federal habeas petition on May 16, 2014, before the limitations period expired.

[4]  It is somewhat unclear how Davis's first ground differs from his third. They both seem to rely on his juvenile status, so they could both be construed as relying on *Miller*, in which case both issues could then potentially escape being time-barred.  It appears the district court found the third ground untimely because it did not explicitly rely on new Supreme Court precedent, while the first ground expressly referenced "[a] new standard [that had] been set in the U.S. Supreme Court." R., Vol. I at 7.  Ultimately, however, even if the third ground escapes the timeliness issue because we construe it as relying on *Miller*, it cannot support a COA for the same reason the first ground cannot.  In any event, Davis failed to challenge the district court's timeliness conclusion regarding the third ground.

weighed in on the issue and need not do so today.[5]  Even assuming *Miller* applies

retroactively to cases on federal collateral review, Davis cannot demonstrate an

entitlement to a COA on this point.

*Miller* invalidated sentencing schemes stripping "the sentencing authority"

of "discretion to impose a different punishment" than life without possibility of

parole on a juvenile offender.  *Miller*, 132 S. Ct. at 2460; *see also id.* at 2466–67

(noting the "mandatory penalty schemes at issue here prevent the sentencer from

taking account" of the mitigating qualities of youth).  Picking up on that

language, other circuit courts have approved life sentences imposed on juveniles

pursuant to a scheme allowing such discretion.  *Croft*, 773 F.3d at 171; *Evans-*

*Garcia v. United States*, 744 F.3d 235, 240–41 (1st Cir. 2014); *Bell v. Uribe*, 748

F.3d 857, 869 & n.6 (9th Cir. 2014).  At the time of Davis's conviction,

Oklahoma allowed the sentencing authority discretion to impose life with the

possibility of parole when sentencing a person convicted of first-degree murder.

Okla. Stat. tit. 21, § 701.9(A) (1991) (providing that a defendant convicted of

first-degree murder "shall be punished by death, by imprisonment for life without

parole or by imprisonment for life").  Accordingly, the OCCA found *Miller*

inapposite because Davis's jury had the "option of imposing a sentence of life

*with* a possibility for parole."  R., Vol. I at 92–93.

---

[5]  The Supreme Court has granted certiorari to answer the question.  *See*
*Montgomery v. Louisiana*, 135 S. Ct. 1546 (2015).

We agree with the other circuits that have addressed this question. And, because that means we would agree with the OCCA's analysis even as a de novo matter, AEDPA deference matters little here. *Miller* said nothing about non-mandatory life-without-parole sentencing schemes and thus cannot warrant granting relief from a life-without-parole sentence imposed under such a scheme. That suffices to resolve this case.

Davis attempts to avoid this result by asserting *Miller*'s logic reaches beyond invalidating mandatory life-without-parole sentencing schemes for juveniles. According to him, *Miller* also established more stringent prerequisites to imposing life without the possibility of parole on juvenile offenders, even in non-mandatory schemes. He says those requirements were not met here, and argues this necessitates granting his petition "whether the state court had discretion . . . or not." Aplt. Br. at 7–8 (stating sentencing hearing "did not approach the sort of hearing envisioned by *Miller* where the factors of youth are carefully and thoughtfully considered").[6] This variation of his claim also fails. At the outset, he does not develop the argument beyond pointing to his counsel's

---

[6] On the other hand, the judge and jury were well aware of his juvenile status. *See* R., Vol. I at 97–104 (references to juvenile status at trial). And Davis admits his attorney referenced his youth "as a plea for mercy" at sentencing. Aplt. Br. at 4. As discussed below, to suggest *Miller* requires more is to request *Miller* be extended, and "if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (internal quotation marks omitted).

allegedly ineffective behavior; he does not, for example, suggest the jury or judge thought they lacked discretion to impose a sentence of life with the possibility of parole. And, as noted, he waived any challenge to the court's determination that his ineffective-assistance claims were untimely. He cannot evade that conclusion by smuggling ineffective-assistance arguments into his one potentially timely claim, and his claim lacks substance beyond those arguments.

More importantly, the only even potentially timely portions of Davis's petition are those "assert[ing]" the new right recognized by the Court in *Miller*. 28 U.S.C. § 2244(d)(1)(C); *see also Prendergast v. Clements*, 699 F.3d 1182, 1187 (10th Cir. 2012). That right is narrowly drawn: it protects juveniles who commit crimes from the mandatory imposition of life without possibility of parole. *See Miller*, 132 S. Ct. at 2460. *Miller* did not purport to alter the law governing statutory schemes giving the sentencing authority a choice between imposing life with or without possibility of parole on juvenile offenders. In short, while *Miller* certainly reiterated the relevance of youth at sentencing as a general matter, Davis's argument at best relies on an extension of *Miller*'s logic. Two dispositive conclusions follow from that: (1) because this version of Davis's argument does not assert the new right actually recognized in *Miller*, it suffers from the same timeliness flaw as his petition's other contentions; and (2) because the state post-conviction trial court rejected this argument, *see* R., Vol. I at 74, AEDPA deference applies, and we cannot say declining to extend *Miller* was

contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, *see supra* n.6. In sum, reasonable jurists would not debate Davis's entitlement to a COA.

## III. Conclusion

For the foregoing reasons, we DENY a COA and DISMISS this appeal. We GRANT Davis's motion to proceed *in forma pauperis* on appeal.