**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 2, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GIL A. MILLER, as Receiver for Impact
Payment Systems, LLC, and Impact Cash,
LLC,

      Plaintiff - Appellee,

v.

ARTHUR S. WULF, an individual,

      Defendant - Appellant.

No. 15-4026
(D.C. No. 1:12-CV-00119-DN)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

Arthur S. Wulf, an Illinois attorney representing himself, appeals the district

court's orders granting the plaintiff's motion for summary judgment, *Miller v. Wulf*,

84 F. Supp. 3d 1266 (D. Utah 2015), and denying his motion for sanctions. We

affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    Background

In October 2008, Wulf paid $60,000 for 60,000 shares of common stock in Impact Payment Systems, LLC and Impact Cash, LLC (Impact).  Impact operated as a Ponzi scheme since at least 2006.  In October 2010, Impact redeemed Wulf's stock by paying him $94,500, gaining Wulf $34,500 in Ponzi winnings.

The plaintiff, Gil A. Miller, is the court-appointed receiver (Receiver) in a civil enforcement action filed by the Securities and Exchange Commission against John Scott Clark and Impact, which Clark controlled.  *See SEC v. Clark*, No. 1:11-cv-46 (D. Utah).  The Receiver filed this action to recover Wulf's Ponzi winnings as a fraudulent transfer.  Both parties filed motions for summary judgment.  Because Wulf failed to comply with a local court rule requiring him to specifically controvert the moving party's numbered statements of facts, *see* D. Utah Civ. R. 56-1(c), the district court deemed admitted the Receiver's factual statements establishing Impact as a Ponzi scheme.  The court then concluded Wulf didn't exchange reasonably equivalent value for the amount he received over his original investment and entered judgment in the Receiver's favor for $34,500 plus pre- and post-judgment interest. The court also denied Wulf's summary-judgment motion and his motion for sanctions under Fed. R. Civ. P. 11 against the Receiver.  Finally, the district court awarded the Receiver his fees in defending the sanctions motion.

## II.    Summary Judgment

"We review a grant of summary judgment de novo, applying the same standard as the district court.  Summary judgment is appropriate where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1233 (10th Cir. 2015) (citation and internal quotation marks omitted).  In conducting our review, "we view the factual record in the light most favorable to the non-moving party." *Id.*  And although we generally construe pro se pleadings liberally, we decline to do so here because Wulf is a licensed attorney.  *See Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001).

Wulf disputes the district court's characterization of Impact as a Ponzi scheme. "A Ponzi scheme is a fraudulent investment scheme in which 'profits' to investors are not created by the success of the underlying business venture but instead are derived from the capital contributions of subsequently attracted investors." *Sender v. Simon*, 84 F.3d 1299, 1301 n.1 (10th Cir. 1996).  Wulf doesn't challenge the district court's ruling deeming the Receiver's fact statement admitted; thus, Wolf has waived any factual challenges.  *See Davis v. McCollum*, 798 F.3d 1317, 1320 (10th Cir. 2015) (holding appellant waived any potential challenge to district court's ruling by failing to address it in his opening appeal brief).

In concluding that Impact was a Ponzi scheme, the district court thoroughly reviewed and considered the Receiver's analysis of Impact's operations and accounting records.  That analysis revealed that Impact commingled investor funds;

3

used money assigned to one investor to pay to another investor; used new investors' money to pay old investors; didn't show an operating profit during any year when investors received distributions; and during 2006 through 2010, paid out over $52.5 million, despite sustaining a net loss of nearly $3 million.

The district court applied the Ponzi presumption of Utah Code Ann. § 25-6-5(1)(a), which provides: "A transfer made . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." Thus, the court ruled that under the statute, "once it is established that a debtor acted as a Ponzi scheme, all transfers by that entity are presumed fraudulent." *Miller*, 84 F. Supp. 3d at 1274. The court also held that "a transfer is not voidable against a person who took in good faith and for reasonably equivalent value." *Id.* (citing Utah Code Ann. § 25-6-9). Relying in part on *Perkins v. Haines*, 661 F.3d 623 (11th Cir. 2011) and *Barclay v. Mackenzie (In re AFI Holding, Inc.)*, 525 F.3d 700 (9th Cir. 2008), the district court articulated the general rule applicable to a Ponzi scheme that "later transfers up to the amount of the investment provided value. But no value is given for payments in excess of principal." *Miller*, 84 F. Supp. 3d at 1275 (citing *Perkins*, 661 F.3d at 628-29, and *In re AFI Holding*, 525 F.3d at 708).

Wulf seeks to distinguish his situation from all other Impact participants, suggesting he made a straightforward stock purchase and later received a dividend payment and stock redemption. According to Wulf, as an equity investor, he received no transfer of property, no portfolio of payday loans, and no profits or

4

income, and thus he wasn't required to forfeit his profit. Wulf further argues the district court misapplied *Perkins* and *In re AFI Holding* because those cases distinguished between equity and debt holders and authorized the investors to retain their original investments plus all of the gain. He's mistaken.

In *In re AFI Holding*, an investor paid $73,400 for membership in a purported limited partnership. He later withdrew from the partnership and received a total payment of $89,824, $16,424 of which was "a fictitious gain." 525 F.3d at 702. The Ninth Circuit noted that the investor "was not being paid on account of an equity position [but] [i]nstead, he was *ending* his interest in the so-called partnership, creating something more than a simple equity payment in proportion to a capital contribution." *Id.* at 708-09. Further, the court noted that even if the investor had invested in good faith, he was "entitled only to the amount he initially provided to AFI." *Id.* at 709.

Similarly, in *Perkins*, the Eleventh Circuit observed that "no court has distinguished between equity investments and debt-based claims when applying the general rule to fraudulent transfer actions arising out of a Ponzi scheme." 661 F.3d at 628. The court stated, under "the general rule, later transfers from the [Ponzi debtor] up to the amount of the investment satisfied the investor defendants' restitution or fraud claims and provided value to the [Ponzi debtor]." *Id.* at 629.

Thus, contrary to Wulf's assertions, neither case held that a shareholder or equity investor in a Ponzi scheme can retain more than his original investment.

5

Wulf next asserts that because the Receiver proffered no evidence of the stock's value, the district court erred in finding that Impact didn't receive reasonably equivalent value for its pay-out to him. The district court concluded Impact didn't receive value because "the stock that was returned was virtually worthless due to the insolvency of the Ponzi scheme," *Miller*, 84 F. Supp. 3d at 1277. Wulf contends Impact wasn't insolvent because the business was sold for $25 million. But the district court's undisputed findings that Impact was a Ponzi scheme defeat this argument. "Ponzi schemes are insolvent by definition." *Klein v. Cornelius*, 786 F.3d 1310, 1320 (10th Cir. 2015); *accord Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006) (stating "a Ponzi scheme . . . is, as a matter of law, insolvent from its inception"). And although Wulf asserts that he wasn't defrauded in his dealings with Impact, the Ponzi presumption doesn't require that an investor be aware of the fraud. *See Klein*, 786 F.3d at 1320-21 (applying Utah Code Ann. § 25-6-5, holding "nothing . . . requires that a transferee be aware of the fraud").

Wulf invested in a Ponzi scheme and was entitled to retain only the amount of his original investment, not his winnings. Consequently, we affirm the judgment in the amount of Wulf's Ponzi winnings, $34,500. Wulf doesn't challenge the district court's award of pre- and post-judgment interest on that amount.

### III.  Motion for Sanctions

Wulf moved for sanctions against the Receiver, claiming he violated Fed. R. Civ. P. 11(b) by needlessly increasing the cost of litigation, refusing to settle, and misrepresenting pertinent case holdings. He has abandoned on appeal the third

6

claim, except to argue on the merits that his own interpretation of the cases is correct. The district court denied the motion and granted the Receiver his attorney fees incurred in defending the motion. We review the district court's ruling for an abuse of discretion. *Roth v. Green*, 466 F.3d 1179, 1187 (10th Cir. 2006).

Wulf complains that the Receiver expended over $60,000 in pursuing a judgment against him for $34,500. The district court addressed the two specific fee expenditures Wulf identified as needlessly increasing litigation costs and held both were reasonable under the circumstances. Addressing the overall fees, the district court concluded that Wulf failed to show that they were "unreasonable, self-imposed, and avoidable." Aplt. App. at 177. The court also rejected Wulf's claim that sanctions were appropriate simply because the Receiver expended $60,000 to attempt to collect $34,500.

On appeal, Wulf argues the Receiver lacked professionalism and "wasted legal fees and time[] for no bona fide legal purpose," Aplt. Opening Br. at 26, and the district judge was biased against him.[1] These conclusory arguments are insufficient to invoke appellate review and we don't address them. *See Habecker v. Town of Estes Park*, 518 F.3d 1217, 1223 n.6 (10th Cir. 2008).

---

[1] Despite his judicial bias claim, Wulf didn't file a motion seeking recusal. So normally we would "employ[] a plain error standard to decide whether the impartiality of the district court was so suspect as to require a new trial." *United States v. Nickl*, 427 F.3d 1286, 1297-98 (10th Cir. 2005) (footnote omitted). But Wulf hasn't even attempted to show plain error, so we won't address this claim. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130-31 (10th Cir. 2011).

Wulf also contends the Receiver acted improperly by refusing to accept his settlement offer. In general, the Receiver offered to settle with those Impact investors who provided financial documentation demonstrating an inability to return all of their winnings from the Ponzi scheme. Wulf concedes he didn't provide any financial documentation. Nevertheless, he asserts the Receiver refused to settle in bad faith due to personal animosity toward him; he was the only one to actively challenge the Receiver's "actions, failures and misdeeds," in the main Ponzi/Impact litigation, Aplt. Opening Br. at 6; and the Receiver refused to recognize that as an Impact stockholder his situation differed from all other Impact investors.

The district court held the Receiver's decision to treat Wulf like other investors and refuse to settle absent submission of financial documentation didn't violate Rule 11. Wulf fails to provide authority or develop argument suggesting the district court abused its discretion. We agree with the district court that attorney fees of $60,000 to obtain a judgment for $34,500 are not per se unreasonable.

Next, Wulf challenges the district court's award to the Receiver of attorney fees incurred in defending Wolf's motion for sanctions. Wolf contends (1) "there was no legal basis for entering sanctions against [him] under any of the standards of Rule 11," Aplt. Opening Br. at 26; (2) he was sanctioned for disputing the Receiver's interpretation of two relevant cases, Aplt. Reply Br. at 24; and (3) the district judge determined that he was not a competent attorney, *id.*

Wulf's first argument is a conclusory statement unworthy of appellate review, *see Palma-Salazar v. Davis*, 677 F.3d 1031, 1037 (10th Cir. 2012) (declining to

8

address conclusory statements (collecting cases)), and his remaining two assertions misstate the district court's order. Accordingly, Wulf hasn't shown the district court abused its discretion in denying his motion for sanctions and awarding the Receiver attorney fees.

Finally, Wulf complains that the terms of Impact's sale improperly gave tax advantages to the buyer. But he hasn't explained how any such ruling adversely affected him. *Cf. Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (stating jurisdictional question of standing requires plaintiff to demonstrate, among other things, an injury in fact). Therefore, we won't address this argument.

We affirm the district court's judgment.

Entered for the Court

Nancy L. Moritz
Circuit Judge

9